UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-277-GWU

MARVIN LEE ANGLIN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

4

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Marvin Lee Anglin, a 43-year-old man with a high school equivalency education and past work experience as a press operator, floor installer, and farm worker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of low back pain status post discectomy in March, 2003 for a herniated nucleus pulposus at L5-S1; being status post stent placement for urethral calculi; being status post surgery for a benign pancreatic cyst with residual abdominal pain; and a history of alcohol abuse in reported remission "and not a

contributing factor material to a finding of disability." (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Anglin retained the residual functional capacity to perform his past relevant work as a press operator, and therefore concluded that he was not entitled to benefits.  (Tr. 19-23).  After a considerable delay, the Appeals Council declined to review, and this action followed.[1]

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of performing "light" level exertion, and was limited to a low stress work environment. (Tr. 683-4).  The VE responded that such a person would be able to return to the job of press operator. (Tr. 684).  In the alternative, the VE testified that there were other jobs that such a person could perform, and proceeded to name them and give the numbers in which they existed in the state and national economies.  (Id.).  On the other hand, if the plaintiff's self-reported limitations of being unable to lift more than a small grocery bag, very limited standing and walking, and inability to bend, and to only occasionally reach were to be accepted, the VE stated that there were no jobs such a person could perform.  (Tr. 685).

---

[1] The ALJ's decision was issued on November 21, 2006 (Tr. 12) and the Appeals Council denied the request for review on June 14, 2010 (Tr. 5).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Anglin alleged disability beginning September 15, 2002 due to a history of a "crushed disc, a pancreatic injury, and kidney stones." (Tr. 57). He testified that his disc injury occurred when a horse had fallen backward on him. (Tr. 669). He also testified to having frequent problems with kidney stones, approximately every three to six months. (Tr. 672-3). Additionally, he had difficulties with bending because of surgery for a pancreatic cyst, in which the surgeon had accidentally put holes in his pancreas and had caused him to use a feeding tube for almost a year. (Tr. 675). From a mental standpoint, he stated that he sometimes got along "pretty well" with people, but sometimes did not want to associate with them due to the pain he was in. (Tr. 679). Mr. Anglin stated that he had alcohol problems in the past, but his last drink had been two months before the September, 2006 hearing. (Tr. 674). He had lost his driver's license because of a DUI two years previously. (Tr. 679). He had also served a six year sentence for second degree burglary and witness intimidation beginning in 1990. (Tr. 665). His only arrests since that time had been for public intoxication. (Tr. 666).

Medical records in the transcript include office notes from Dr. Phillip Tibbs, a neurosurgeon, who treated the plaintiff in 2003 and reviewed an MRI showing a herniated disc at L5-S1 impinging on the thecal sac. He also noted positive straight

7

leg raising tests on the left with pain radiating into the left calf. Dr. Tibbs performed a left L5-S1 lumbar microdiscectomy on March 14, 2003, and by March 31, Mr. Anglin was reporting he was 50 to 60 percent better. (Tr. 179). Dr. Tibbs did not suggest any permanent functional restrictions. Mr. Anglin continued to see an orthopedist, Dr. William J. Lester, or Dr. Lester's nurse-practitioner, for medications, although it appeared that by the end of 2003 his main problems were with abdominal pain, partially related to kidney stones. (Tr. 203-8). The plaintiff apparently discontinued seeing Dr. Lester in September, 2004 after he refused to prescribe any more narcotics. (Tr. 199). Dr. Lester did not suggest any functional restrictions. Other medical records include treatment for a pancreatic cyst and gallbladder removal in April, 2003, which was followed by a re-hospitalization for ten days because of a pancreatic fluid leak. (Tr. 132, 192-6). He was given a feeding tube on discharge and told to perform activity as tolerated, but no lifting. (Tr. 132). In 2005, Mr. Anglin was briefly hospitalized for kidney stones and a left stent was placed in his ureter, but again no functional restrictions were imposed. (Tr. 268, 279).

     Dr. James C. Owen conducted a consultative physical examination of the plaintiff in June, 2005. (Tr. 236). Dr. Owen found some mild epigastric tenderness along with multiple scars on the abdomen, and reflexes were absent at the ankles. (Tr. 238). However, strength and coordination were normal, reflexes were present

and symmetrical at the knees, straight leg raising tests were negative, and there were no abnormalities in squatting, heel and toe walking, tandem walking, or in the Romberg test. (Id.). Mr. Anglin was able to bend forward 80 degrees at the waist. (Id.). X-rays of the lumbar spine showed good alignment, normal articular surfaces, and normal spacing. Dr. Owen diagnosed him as being status post discectomy "with what appears to be a good result of regaining range of motion, minimal functional problem," being status post pancreatic cyst removal with scarring and intermittent pain on bending, and mild depression with "loose" associations. (Id.). In terms of functional limitations, Dr. Owen opined that Mr. Anglin would have only mild difficulty in lifting, handling, and carrying objects, and that hearing, seeing, speaking, and traveling were only minimally affected.

A state agency physician, Dr. S. Mukherjee, reviewed the evidence as of August, 2005 and concluded that the plaintiff could perform medium level exertion with no balancing, occasional climbing, and a need to avoid concentrated exposure to vibration and hazards. (Tr. 240-6).

From a psychological standpoint, Mr. Anglin was examined by Sandra Medley, Ph.D., also in October, 2005. (Tr. 248). He reported bad nerves, alcoholism, and depression, but his mood appeared to be euthymic, and he arrived at the evaluation with his girlfriend, whom he had been dating for three months. (Tr. 249). Mr. Anglin described a history of 15 arrests for DUIs, public intoxication and

domestic dispute charges, various misdemeanors, and second degree burglary which had resulted in him spending approximately six years in jail altogether. (Tr. 251). He had an extensive substance abuse history but had decided to stop using alcohol three months earlier.[2] It had been difficult to stop drinking and he had experienced physical withdrawal symptoms. Dr. Medley stated that Mr. Anglin did not get a good report of his current mental health concerns, basically indicating that he was bored. (Tr. 251). There was no sign of an anxiety disorder and he did not report any functional limitations associated with nervousness. (Id.). He did indicate that his hand shook due to nervousness, but the psychologist thought it could be related to alcohol dependence. His girlfriend did say that he downplayed his depression, and that he was struggling with his son, sobriety, finances, physical concerns, and feeling useless. However, he reported that he was independent with his household chores and personal needs, and attended church with his girlfriend. (Id.). Dr. Medley diagnosed only alcohol dependence in early full remission by the plaintiff's report. (Tr. 252). He appeared to have a good ability to understand and remember simple instructions, sustain concentration and persist on tasks, interact appropriately socially, and adapt and respond to pressures normally found in a day-to-day work setting. (Id.).

---

[2]As previously noted, he testified at the administrative hearing 13 months later that he had stopped drinking two months earlier. (Tr. 674).

A state agency psychologist, Dr. Jan Jacobson, reviewed the record in September, 2005 and concluded that the plaintiff did not have a "severe" mental impairment.  (Tr. 254).  The ALJ stated in her opinion that she considered the opinion of the state agency medical consultant that the plaintiff could perform medium level exertion, but in order to give him the benefit of the doubt regarding his complaints of pain, would limit him to "light" work.  (Tr. 21).

While the plaintiff suggests on appeal that the ALJ did not give sufficient weight to his treating physicians, such as Dr. Tibbs and Dr. Lester, he does not identify any specific opinion from these sources which conflicts with the ALJ's conclusion.  Under the circumstances, the ALJ could reasonably have relied on the opinion of Dr. Owen that the plaintiff would have no more than mild difficulty in any area, as well as the opinion of Dr. Mukherjee, who reviewed the bulk of the evidence.  It was the plaintiff's responsibility to bring forth medical evidence of greater restriction, and he failed to do so.

The plaintiff also suggests that he meets the requirements of the Commissioner's Listing of Impairment (LOI) 1.04, for disorders of the spine.  Listing 1.04 provides for a finding of disability where a claimant can show a disorder of the spine resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor

loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2010).

However, Dr. Owen's most recent examination showed a negative straight leg raising test, no muscle weakness, very little limitation of motion of the spine, no evidence of severe burning or painful dysesthesia, and no mention was made of pseudoclaudification or any inability to ambulate effectively. A claimant must meet all of the specified medical criteria to show that his impairment matches a listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Finally, it should be noted that although extensive additional evidence was submitted to the Appeals Council, some of which was cited by the plaintiff in criticizing the ALJ's determination, such additional evidence is not part of this court's substantial evidence review. Cline v. Commissioner of Social Security, 96 F.3d 146,

148-9 (6th Cir. 1996).  Nor has the plaintiff requested a remand under Sentence Six of 42 U.S.C. § 405(g).

The decision will be affirmed.

This the 18th day of May, 2011.

**Signed By:**
**G. Wix Unthank**
**United States Senior Judge**